**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| APOTEX CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 04 C 7312 |
| ) | |
| MERCK & CO., INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Apotex Corp. has sued Merck & Co., alleging that Merck obtained a favorable judgment in an earlier case, in which Apotex had sued Merck for patent infringement, by making a number of fraudulent representations to this Court. Apotex has filed an action in which it asks the Court to vacate the judgment in the previous case pursuant to Federal Rule of Civil Procedure 60(b)(3) (Count 1) and also asserts state law claims against Merck for common law fraud (Count 2) and tortious interference with prospective economic advantage (Count 3). Merck has moved for summary judgment. For the following reasons, the Court grants Merck's motion.

### Facts

The resolution of this motion is the latest chapter in Apotex's prolonged attempt to establish the validity of two patents (Nos. 5,573,780 and 5,690,962) that cover a process for making a pharmaceutical compound used to treat high blood pressure. The process involves the following steps:

> (i)(a) mixing enalapril maleate with an alkaline sodium compound and at least one other excipient, adding water sufficient to moisten, and mixing to achieve a wet mass, or

> (b) mixing enalapril maleate with at least one excipient other than an alkaline sodium compound, adding a solution of alkaline sodium compound in water, sufficient to moisten and mixing to achieve a wet mass; thereby to achieve a [virtually complete] reaction without converting the enalapril maleate to a clear solution of enalapril sodium and maleic acid sodium salt in water.
> (ii) drying the wet mass, and;
> (iii) further processing the dried material into tablets.

*See* '780 Patent. The Court ruled in January 2000 that the claim required a "virtually complete" reaction of the active ingredient, enalapril maleate. *See Apotex Corp. v. Merck & Co., Inc.*, No. 96 C 7375, 2000 WL 97582, *3 (N.D. Ill. Jan. 25, 2000) (*Apotex I*).

Apotex originally sued Merck for patent infringement in 1996, and after the case was reassigned to this Court's docket in June 1999, we ruled in January 2000 that Merck had infringed the patents but that the patents were invalid under 35 U.S.C. § 102(g). *Id.* at *5, 8. Section 102(g) provides that an applicant is not entitled to a patent if "before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it."

In the previous case, the parties agreed that Merck invented the allegedly infringing process long before Apotex conceived of the idea. Apotex maintained, however, that its patents were valid because Merck had suppressed or concealed the invention. The Court rejected Apotex's argument, relying on evidence that prior to the date of Apotex's alleged invention, Merck had widely distributed a list of ingredients found in its product and that Merck's vice president of marketing, Brian McLeod, narrated a videotape describing the process during the trial of a lawsuit in Canada. The Court also relied on admissions from Apotex witnesses that "any chemist who knew the ingredients and knew that the process involved adding water to the mix would automatically know that a reaction of the enalapril malete occurred." *See id.* at *8.

The Federal Circuit affirmed this Court's ruling. *See Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1040 (Fed. Cir. 2001).

Apotex now maintains that the Court's January 2000 ruling as well as the Federal Circuit's June 2001 ruling were obtained by fraud. Specifically, Apotex claims that Merck falsely responded to a discovery request seeking "all facts and documents" supporting its allegations of patent invalidity by stating that "the entire process was publicly discussed in open court by Brian McLeod during the Canadian Litigation" and that "[t]his process has not been abandoned, suppressed, or concealed." Apotex Mem. at 2-3. Apotex also claims that Merck misrepresented facts in its summary judgment brief submitted to this Court and in its brief submitted to the Federal Circuit. It points to Merck's statements in those briefs that "[t]he details of the process were the subject of public testimony in a court action in Canada"; Brian McLeod provided a "*step by step* explanation of Merck's process"; "one could reverse engineer Merck's process by examining Merck's tablets and by reviewing the ingredient list"; "Merck disagrees that it ever suppressed or concealed the invention"; and Merck's "conduct in the late 1980s and early 1990s belies any intention to keep its process secret." *See id.*

Apotex contends that Merck admitted the untruth of these statements in 2004 when its key witness in the 2000 case, Dr. Brenner, testified as follows in a different case:

- "The 'lynch pin' [sic] of Merck's process for making stable enalapril tablets was the conversion of enalapril maleate to enalapril sodium, and the key factor in the stabilization of enalapril tablets was the extent to which this reaction went to completion." Apotex Mem at 3.

- A number of factors played important roles in the stabilization process, including "the type of mixing equipment, the duration and temperature of the mixing, the holding time in the mixing equipment after mixing, and the particle size of sodium bicarbonate." *Id.*

- Merck's Canadian demonstration did not disclose that Merck was converting enalapril maleate to enalapril sodium, the above listed factors, or the need to have a complete or virtually complete reaction. *Id.*

- The process for making enalapril tablets could not be reverse engineered because it would be difficult to determine that there was enalapril sodium in Merck's VASOTEC® tablets. *Id.* at 4.

- "Merck decided to maintain as a trade secret the critical process steps for reacting enalapril maleate and sodium bicarbonate to produce enalapril sodium in the wet granulation rather than seeking patent protection for the process." *Id.*

- Merck had maintained the critical role of sodium bicarbonate in its process a trade secret until December 1994. *Id.*

- Merck never disclosed its actual process for making VASOTEC® until May 2004. *Id.*

On July 22, 2005, Apotex moved to compel the production of documents that included the thoughts and impressions of the attorneys who participated in the earlier case. Merck objected to the request on the basis of attorney-client privilege, but Apotex contended that this privilege had been waived because Merck used the attorney-client relationship to perpetuate a fraud. The Court denied Apotex's motion, concluding that Apotex had not made a *prima facie* showing of fraud. *Apotex Inc. v. Merck & Co., Inc.*, 229 F.R.D. 142, 147 (N.D. Ill. 2005). The Court said that Merck's purported fraudulent statements were nothing more than its attorney's reasonable inferences from the evidence as it existed in the record. *Id.* at 148.

**Discussion**

Apotex's motion involves two Federal Rules of Civil Procedure: Rule 56(c) and Rule 60(b)(3). Rule 56(c) says that a motion for summary judgment shall be granted "if the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

4

entitled to judgment as a matter of law." In considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws reasonable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Rule 60(b)(3) allows a court to "relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Under this rule, "the victim of the fraud . . . need show only that it affected his ability to present his case, not that he would have won had the fraud or misconduct not occurred." *Ty Inc. v. Softbelly's Inc*., 353 F.3d 528, 536 (7th Cir. 2003). At the same time, a court will not relieve a party from a final judgment if the alleged misrepresentations were not relevant to the theory on which the district court based its decision. *See Williams v. U.S. Drug Enforcement Admin.*, 51 F.3d 732, 736 (7th Cir. 1995). Fraud must be shown by clear and convincing evidence. *See Ty Inc.*, 353 F.3d at 537. Motions under Rule 60(b)(3), even when they involve patent cases, are resolved according to regional circuit law. *See Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1204-05 (Fed Cir. 2005).

Apotex has pointed to three different groups of fraudulent statements that it contends require the Court to grant Apotex relief from judgment. The first group involves statements in which Merck allegedly said that it publicly disclosed its entire process, the second group involves statements in which Merck allegedly said that one could reverse engineer Merck's process, and the third group involves statements in which Merck allegedly said that it never suppressed its invention. We examine each group of statements in turn.

**1. "[T]he entire process was publicly discussed"**

5

During discovery in *Apotex I*, Apotex served Merck with Interrogatory No. 17, which asked Merck to identify "all facts and documents" that supported Merck's allegation of patent invalidity. Merck responded as follows:

> Merck was wet granulating enalapril maleate with sodium bicarbonate and at least one excipient in the early 1980s. This process has not been abandoned, suppressed, or concealed. These ingredients were clearly published in the Dictionnaire Vidal since at least 1985. The ingredients were also published on numerous promotional materials provided to pharmacists and doctors in Canada. The formulation process has been used continuously in Merck's plants in the United States. Moreover, the entire process was publicly discussed in open court by Brian McLeod during the Canadian Litigation. All of this occurred before the date of conception by the alleged inventor.

Apotex's L.R. 56.1 Stmt. of Add'l Facts ¶3. Apotex contends that Merck's statement was fraudulent because Merck had not disclosed "the entire process" by 1994. Specifically, Apotex says, Merck had not disclosed five critical factors used to perfect the stabilization of the product: the type of mixing equipment used, the duration of mixing, the temperature of the water, the holding time after mixing, and the particle size of the sodium bicarbonate. Apotex contends that Merck had also not disclosed that the purpose of sodium bicarbonate in the solution was to react with enalapril maleate to form enalapril sodium.

Apotex's argument is premised on a faulty assumption. It assumes that when Merck was referring to a "process" in its response to Interrogatory 17, it was referring to the entire process, from start to finish, used by Merck to make its VASOTEC® tablets. Read in context, however, it is clear that Merck was referring not to the VASOTEC® process in its entirety, but rather to the process described in the first sentence of the interrogatory answer: the process of "wet granulating enalapril maleate with sodium bicarbonate and at least one excipient" – the process patented by Apotex. In short, read in context, no reasonable fact finder could conclude that the response to Interrogatory 17 was false or fraudulent and certainly could not conclude that this

6

had been shown by clear and convincing evidence: the five critical factors cited by Apotex were not a part of Apotex's patented process.

Apotex contends that even if the word "process" is understood to include only those processes listed in Apotex's patent, it was nevertheless dishonest for Merck to assert that it had disclosed the "entire process" because Merck had not disclosed the fact that its process "combined enalapril maleate and sodium bicarbonate in a manner that created enalapril sodium[] and failed to disclose the fact that the reaction between the two had to be complete or mostly complete." Apotex Mem. at 16. This argument is a partial rehashing of an argument that was previously resolved in the Court's January 2000 ruling, where we stated as follows:

> To the extent Apotex is implying that in 1983 Merck was hiding the fact that its process involved reacting enalapril maleate to form a more stable enalapril sodium compound, that time frame is irrelevant. The relevant time frame for purposes of § 102(g) is when the later inventor conceives of his invention - in this case, some time between March 30, 1994 and April 19, 1994. By that time, Merck had fully disclosed the ingredients and the process. Plus, even Apotex's witnesses agreed that any chemist who knew the ingredients and knew that the process involved adding water to the mix would automatically know that a reaction of the enalapril maleate occurred. Dr. Richard McKeag, a scientist who worked with Dr. Sherman at Apotex Canada, testified that "[i]t was so simple that it was obvious; any chemist would know that, if you added bicarbonate or carbonate to a solution containing enalapril maleate, you would get the formation of the salt. You would get a chemical reaction to form a salt." McKeag Deposition Transcript, at 41. He also testified that "if you take sodium bicarbonate and put it into water and you have enalapril maleate in the same solution, it will react virtually spontaneously and irreversibly to form a new compound, to form enalapril sodium and disodium maleate." *Id.* at 46. Finally, he testified that "any chemist who looks at enalapril maleate would automatically assume its going to react with three moles of sodium bicarbonate ⋯ if they are placed together in solution or in slurry or whatever, anything wet." *Id.* at 47. In short, what Apotex characterizes as "rank suppression and concealment" would not have fooled anyone - or at least anyone with a fundamental knowledge of chemistry.

*See Apotex I*, 2000 WL 97582 at *8. As this excerpt reflects, Apotex contended during the original summary judgment briefing in this case that Merck had not disclosed the presence of

7

enalapril sodium in its tablets. Thus, Apotex was well aware of this purported misrepresentation during the previous litigation and was fully capable of bringing it to the Court's attention. As a result, the statement cannot constitute a basis for relief under Rule 60(b). *See Oxxford Clothes XX, Inc. v. Expeditors Int'l of Wash., Inc.*, 127 F.3d 574, 578 (7th Cir. 1997) (denying relief under Rule 60(b) where party was aware of alleged misrepresentations during previous litigation).

Insofar as Apotex contends that Merck's "entire process" statement was fraudulent because Merck had not disclosed that the enalapril reaction needed to be "virtually complete," the Court again concludes that this argument was available to Apotex during the previous litigation. McLeod's presentation in the Canadian lawsuit and the VASOTEC® ingredient list has been available to Apotex since at least May 1994. If there was an aspect of Apotex's process that Apotex felt Merck had not publicly disclosed – such as the virtual completeness of the reaction – then Apotex was free to argue that point to the Court in the previous litigation. As a result, Apotex has failed to offer evidence that Merck's response to Interrogatory 17 requires the Court to grant relief under Rule 60(b).

Apotex also argues that Merck made fraudulent statements in the briefs submitted to this Court and the Federal Circuit that "[t]he details of the process were the subject of public testimony in a court action in Canada"; that "McLeod provided a visual, step by step explanation of Merck's process"; and that McLeod's presentation "was so detailed that it would allow one to understand Merck's process." First, as discussed above, if there was some aspect of Apotex's patented process – some "detail" or "step" – that Apotex believed Merck did not publicly disclose through McLeod's presentation in Canada, then Apotex had every opportunity to

8

present this argument in the previous litigation and cannot now claim Merck committed a fraud on the court. Second, as discussed in more detail below, these statements were not responses to discovery requests or deposition testimony offered by Merck. Rather, they were permissible arguments based on the evidence and were therefore not fraudulent.

> 2.  **"One could reverse engineer Merck's process by examining Merck's tablets and by examining Merck's tablets and by reviewing the ingredient list in the Product Monograph."**

Apotex next contends that Merck made a fraudulent statement on page forty-four of its brief filed in the Federal Circuit. There Merck argued, based on the testimony of Apotex's inventor Dr. Sherman, that "one could reverse engineer Merck's process by examining Merck's tablets and by reviewing the ingredient list in the Product Monograph." Apotex maintains that this statement was fraudulent because Merck's Dr. Brenner admitted in 2004 that one could not "practice the process" simply by examining the tablets and reviewing the ingredients list.

As with the statement by Merck discussed in the previous section, Apotex takes this argument about reverse engineering completely out of context. In the two paragraphs immediately preceding the "reverse engineering" statement, Merck's brief recounts several parts of Dr. Sherman's testimony in which he stated that he determined that VASOTEC® tablets were prepared through a wet granulation process simply by examining them; after learning the ingredients in the tablets, he concluded that only Merck's actual process was probable; and tests he performed on the tablets revealed that they contained enalapril sodium. After recounting this testimony, Merck's brief goes on to conclude, "Thus one could reverse engineer Merck's process by examining Merck's tablets and by reviewing the ingredient list."

As noted in the Court's June 29, 2005 ruling on the attorney-client privilege issue, "the

lawyer's statements in Merck's briefs were not an attempt to characterize the truth as an omniscient observer might see it." *Apotex Inc.*, 229 F.R.D. at 147. Rather, the "reverse engineering" statement was a reasonable inference that could be drawn from the evidence revealed during discovery, specifically, from the statements made by Dr. Sherman. As the Court concluded in its previous ruling, "It was not a 'fraud' for Merck to argue the inferences from the evidence that had been presented in the case – even if it now turns out that the evidence that was presented might not have represented the full story." *Id.*

Apotex has not offered evidence that it made discovery requests concerning whether Merck's process could be "reverse engineered," nor has it offered evidence that Merck responded dishonestly to any such requests. Instead, Apotex's argument amounts to a contention that Merck failed to disclose voluntarily evidence that may have undercut the statement it made in its appellate brief – a statement, that was, again, a reasonable inference based on the evidence produced during discovery. Mere non-disclosure by a party or a party's attorney in a civil case does not amount to a fraud upon the court. *See* 11 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2870 (1995); *Wilson v. Johns-Mansville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1989) (declining to grant plaintiffs' 60(b) motion when defendants successfully used a "state of the art" defense in a products liability trial and plaintiffs later learned of studies, of which the defendants were aware, that undercut the defendants' theory). For these reasons, Apotex has not offered evidence that Merck's statements in its appellate brief require the Court to grant relief under Rule 60(b).

### 3. "Merck disagrees that it ever suppressed or concealed the invention"

Apotex's last group of purportedly fraudulently statements relate to the alleged

suppression of Merck's process. Apotex points to a statement in Merck's response to Interrogatory No. 17, in which it said, "This process has not been abandoned, suppressed, or concealed"; a statement in Merck's summary judgment brief in which it argued, "Merck disagrees that it ever suppressed or concealed the invention"; and a statement in Merck's appellate brief in which it argued, "Merck's conduct in the late 1980s and early 1990s belies any intention to keep its process secret." Apotex maintains that Dr. Brenner effectively showed these statements were untrue when he testified in 2004 that Merck decided to maintain the role of sodium bicarbonate in its process a trade secret until the late 1980s or early 1990s and that part of the discussion relating to that decision was the fact that the process could not be discerned simply by knowing the ingredients contained in the VASOTEC® tablet.

With regard to Merck's response to Interrogatory 17, in which Merck said the "process ha[d] not been abandoned, suppressed, or concealed," Apotex has again taken a single sentence out of context in an attempt to support its contention that fraud occurred. In this response, Merck first asserted that the process had not been suppressed. Then, in support of this contention, it asserted that the VASOTEC® ingredients had been published in the 1980s and that Apotex's claimed process was publicly discussed during the Canadian litigation on March 28, 1994. Thus, Merck was only asserting that it had not suppressed the process after March 28, 1994. Read this way, Dr. Brenner's testimony, in 2004, that Merck had suppressed the role of sodium bicarbonate in its process until the early 1980s or 1990s, is not evidence from which a fact finder could conclude that Merck's response to Interrogatory 17 was fraudulent, let alone by clear and convincing evidence.

Even if Merck had fraudulently asserted that it had not suppressed the process before

11

March 28, 1994, however, this fact would not have been material to the Court's previous ruling. The time period relevant to the Court's suppression analysis was the period after March 30, 1994.[1] *See Apotex 1*, 254 F.3d at 1040 ("though Merck may have suppressed or concealed the process for a period of time . . ., as long as it 'resumed activity' (i.e., made the benefits of its invention known to the public) before Apotex's entry into the field, it cannot be deemed to have suppressed or concealed [it]."); *Apotex I,* 2000 WL 97582 at *8 ("To the extent Apotex is implying that in 1983 Merck was hiding [its process], that time frame is irrelevant. The relevant time frame for purposes of 102(g) is when the later inventor conceives of his invention – in this case, some time between March 30, 1994 and April 30, 1994."). Misrepresentations that are immaterial to the legal issues upon which a district court decides a case cannot form the basis for relief under Rule 60(b). *See Simons v. Gorsuch*, 715 F.2d 1248, 1253 (7th Cir. 1983).[2]

Apotex also contends that Merck made fraudulent assertions in its summary judgment and appellate briefs, in which it stated that "Merck disagrees that it ever suppressed or concealed the invention," and that "Merck's conduct in the late 1980s and early 1990s belies any intention to keep its process secret." These statements, however, like those discussed previously, were statements made by Merck's attorneys concerning the reasonable inferences that could be drawn

---

[1] Apotex has not offered any evidence – let alone clear and convincing evidence – from which a fact finder could determine that Merck suppressed its process (i.e., the process patented by Apotex) after March 28, 1994.

[2] Apotex argues that Merck's alleged misrepresentations concerning the suppression of its process must have been relevant because another court, in *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, No. Civ.A. 99-922DRD, 2004 WL 1498162, *20 (D.N.J. June 29, 2004), ruled that Merck's suppression of its process was relevant. In *Warner-Lambert*, however, the plaintiff's patented process was conceived not in March 1994, but in August 1986. *Id.* Consequently, the court's ruling does not demonstrate that Merck's alleged suppression of its process prior to March 30, 1994 is relevant in this case.

from the evidence uncovered during discovery. As such, they were not fraudulent and cannot form the basis of relief under Rule 60(b). *See supra* at 9-10.

The cases cited by Apotex do not call for a different result. In *Hazel-Atlas Glass Oil Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), the Court held that a patent attorney committed fraud on the court when he fabricated a trade journal article to obtain a patent and then to establish the validity of the patent in the court of appeals. In *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995), the court held that the defendant committed fraud on the court when he deliberately concealed damaging evidence that the plaintiff had specifically requested during discovery. Apotex has not offered evidence that Merck deliberately withheld or fabricated evidence in the previous litigation.

4. **Apotex's expert testimony**

Apotex offers expert testimony from two distinguished legal scholars in support of its argument that Merck committed fraud during the underlying litigation. Merck contends that this testimony is inadmissible because it offers opinions on whether Merck committed a fraud. The admission of expert testimony is governed by Federal Rule of Evidence 702 and the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). According to the Seventh Circuit, the Court first must determine whether the expert's testimony is reliable by assessing whether the expert is qualified in the relevant field and by examining the expert's methodology. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). The Court must then determine if the expert's testimony will assist the trier of fact in understanding the evidence or determining a fact at issue in the case. *Id.* at 721. Though Rule 704 of the Federal Rules of Evidence allows experts to opine on "ultimate issues to be decided by the trier of fact," the

13

testimony must still assist the fact finder to reach a decision on a particular issue in controversy.

The Seventh Circuit has held that legal conclusions that will determine the outcome of a case are inadmissible expert testimony. *See Good Shepherd Manor Found., Inc. v. City of Chicago*, 323 F.3d 557, 564 (7th Cir. 2003). In addition, several judges in this district, including this Court, have held that expert testimony is not helpful to a trier of fact when the expert simply opines that an individual acted dishonestly or fraudulently, issues traditionally resolved by a trier of fact. *See Ass'n Benefit Svcs. v. AdvancePCS Holding Corp.*, No. 04 C 3271, 2005 WL 2335484, *4 (N.D. Ill. Sept. 23, 2005) (holding that expert could not testify about ultimate issue of defendant's fraudulent intent); *Klackzak v. Consolidated Med. Transp., Inc.*, No. 96 C 6502, 2005 WL 1564981, *8, 10 (N.D. Ill. May 26, 2005) (holding that expert could not testify that defendants committed fraud within the meaning of the Anti-Kickback statute); *Dahlin v. Evangelical Child & Family Agency,* No. 01 C 1182, 2002 WL 31834881, *3 (N.D. Ill. Dec. 18, 2002) (excluding expert testimony that the defendant's employees acted dishonestly).

Much of Apotex's expert testimony – which reads more like a legal brief than an expert report – consists of plainly inadmissible legal conclusions concerning Merck's alleged fraud and would be completely unhelpful to the fact finder. *See* Ex. E ¶36 ("It is my opinion based on the evidence that . . . Merck's conduct . . . [was] a fraud on the courts."); Ex. F ¶58 ("In my view, the fraud perpetrated on this court in *Apotex I* was more serious that the misconduct that occurred in that leading Supreme Court case"). The Court, not an expert, must determine whether Merck's statements rise to the level of fraud under Rule 60(b), and the fact finder, not an expert, must determine whether Apotex has offered evidence that Merck committed common law fraud. Because Apotex has not shown how these experts' testimony would assist us in doing

so, the testimony is inadmissible under Rule 702.

   5.   **State law claims**

Apotex has also asserted state law claims for common law fraud and tortious interference with prospective economic advantage. Apotex premises both claims, however, on the theory that "this Court invalidated Apotex's patents based on Merck's false assertions." *See* Apotex Mem. at 22. Because the Court has already concluded that Apotex has not offered evidence from which a reasonable fact finder could conclude that Merck made material misrepresentations in the previous litigation, Merck is entitled to summary judgment on these claims as well. *See Rauenhorst v. United States*, 104 F.R.D. 588, 603 (D. Minn. 1985) (dismissing plaintiff's common law fraud claims that were based on the same alleged misstatements that formed the basis of plaintiff's 60(b) motion).

**Conclusion**

For the reasons stated above, the Court grants defendant's motion for summary judgment [docket no. 71]. The Clerk is directed to enter judgment in favor of the defendant.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:   April 25, 2006